ORIGINAL

Lawrence A. Goudie
4031 N. F St.
San Bernardino, CA 92407
Telephone: 909-266-1642
Fax: 909-266-1065
Email: lagoudie@yahoo.com
Plaintiff in Pro Se

FILED
CLERK, U.S. DISTRICT COURT

JUL 29 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LAWRENCE A. GOUDIE
    Plaintiff,

vs.

BANK OF NEW YORK MELLON,
FKA BANK OF NEW YORK, as
Trustee for the Luminent Mortgage
Trust, Mortgage Pass-through cert-
ificates, series 2006-1, a business
entity, form unknown; RECONTRUST
COMPANY, N.A., a business entity,
form unknown; BANK OF AMERICA,
N.A., a business entity, form unknown;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.
form unknown; and DOES 1-10
inclusive.

        Defendant(s)

Case No. EDCV14-00539 CAS(PJWx)
                        PA

FIRST AMENDED COMPLAINT FOR:

1. DECLARATORY RELIEF
   [28 U.S.C. § 2201, §2202]
2. NEGLIGENCE
3. QUASI CONTRACT
4. VIOLATION OF 15 U.S.C. § 1692,
   ET SEQ.
5. VIOLATION OF ROSENTHAL ACT
6. VIOLATION OF CALIFORNIA
   BUSINESS AND PROFESSIONS
   CODE SECTION 17200, ET SEQ.
7. ACCOUNTING
8. CIVIL CONSPIRACY

DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

I.      STATEMENT OF THE CASE...................................................................    3

II.     JURISDICTION, VENUE, AND PARTIES...........................................  4

III.    INTRODUCTION.........................................................................7

IV.     THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE CHAIN OF
        TITLE TO PLAINTIFF'S HOME.........................................................16

V.      THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT
        LIEN THAT CONVEYED NO INTEREST TO BNY.............................19.

VI.     THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENT
        THAT CONVEYED NO AUTHORITY TO RECON TO ACT AS THE TRUSTEE .......  24

VII.    PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT,
        MONETARY, LEGAL, AND EQUITABLE DAMGES..................................27

VIII.   FIRST CAUSE OF ACTION - DECLARATORY RELIEF: To DETERMINE STATUS
        OF  DEFENDANTS' CLAIMS [28 U.S.C .§ 2201, § 2202]..............................28

IX.     SECOND CAUSE OF ACTION – NEGLIGENCE...........................................31

X.      THIRD CAUSE OF ACTION - QUASCONTRACT........................................33

XI.     FOURTH CAUSE OF ACTION – VIOLATION OF 15 USC §1692, ET SEQ...........34

XII.    FIFTH CAUSE OF ACTION – VIOLATION OF ROSENTHAL ACT...................40

XIII.   SIXTH CAUSE OF ACTION – VIOLATION OF BUS. & PROF. CODE
        SECTION 17200, ET SEQ.............................................................41.

XIV.    SEVENTH CAUSE OF ACTION – ACCOUNTING......................................44

XV.     EIGHTH CAUSE OF ACTION – CIVIL CONSPIRACY.................................45

XVI.    DEMAND FOR JURY TRIAL ......................................................48.

# COMPLAINT

COMES NOW Plaintiff Lawrence A. Goudie ("Plaintiff" or "GOUDIE"),  for his

Complaint against Defendants, BANK OF NEW YORK MELLON, FKA BANK OF

NEW YORK, as Trustee for the Luminent Mortgage Trust, Mortgage Pass-through

Certificates, Series 2006-1 (in its capacity as purported assignee of Plaintiff's Deed of

Trust) (hereinafter "BNY"); and Bank of America, N.A. (in its capacity as purported

substituted mortgage servicer of Plaintiff's Note and Deed of Trust) (hereinafter

"BOA"), ; RECONTRUST COMPANY, N.A.(hereinafter  "RECON");

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter

'MERS"); collectively "Defendants", pleads as follows:

## I. STATEMENT OF THE CASE

1.        Plaintiff alleges that Defendants are third-party strangers to his mortgage

loan-and have no ownership interest entitling them to collect payment or declare a

default. By hiding behind the complexities of the mortgage finance system,

Defendants brazenly attempt to dupe Plaintiff (and millions of other American

homeowners) into believing that they have the right to collect on a debt in which BNY

has no ownership interest. In an attempt to further their fraudulent scheme and create

the air of propriety surrounding their debt collection efforts, Defendants have resorted

to "papering the file" by fabricating an "Assignment of Deed of Trust," employing

individuals who have no authority or personal knowledge of the facts to which they

attest, and falsely representing to Plaintiff and *to the Court* that they have the right to take Plaintiff's property away. Not only is Defendants' conduct a *criminal violation* of California's Mortgage Fraud Statute, Cal. Penal Code section 532(0(a)(4)[1], and an affront to long-standing property laws, but their reliance on fabricated and forged documents undermines the integrity of the judicial system. Through this action, Plaintiff seeks to stop Defendants' fraudulent practices, discover the true holder in due course of his   promissory Note ("Note"), and determine the status of Defendants' claims.

## II. JURISDICTION, VENUE, AND PARTIES

2.      This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692, 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[2]

3.      This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

---

[1].Cal. Penal Code section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following... (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

4.      This Court has original jurisdiction over the claims in this action based on 28

U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits

between diverse citizens that involve an amount in controversy in excess of $75,000.00.

5.      The unlawful conduct, illegal practices, and acts complained of and alleged in

this Complaint were all committed in the Central District of California and involved

real property located in the Central District of California. Therefore, venue properly lies

in this District, pursuant to 28 U.S.C. § 1391(b).

6.      Plaintiff is now, and at all times mentioned herein, an individual residing in the

County of San Bernardino. At all times relevant to this action, Plaintiff has owned real

property commonly known as 929 Myrtle Ave., Big Bear City, California 92314 (the

"Property"), further described as Assessor's Parcel Number 0313-101-16-0-000.

Plaintiff is a "consumer" as that term is defined by U.S.C. § 1692a(3).

---

[2]The Ninth Circuit instructs that in actions brought under 28 U.S.C. § 2201, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942). The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart,* 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11-03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court in *Schafer,* this action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

7.        Defendant,  BANK OF NEW YORK MELLON, FKA  BANK OF NEW

YORK, as Trustee for the Luminent Mortgage Trust, Mortgage Pass-through

Certificates, Series 2006-1, (hereinafter referred to as "BNY"),  a business entity,

form unknown, was at all times herein conducting interstate business in the State of

California. The principal place of business of BNY is 101 Barclay St, 4 W, New York,

NY, 10286. . Defendant BNY is a "debt collector" pursuant to 15 USC §1692a(6) of the

Fair Debt Collection Practices Act, and pursuant to Rosenthal Act specifically

Cal.Civ.Code §1788.2(c)..

8.        Defendant Bank of America, N.A. (hereinafter referred to as "BOA"), a

business entity, form unknown,  authorized to do business in the State of

California.  BOA was the servicer of the loan for BNY. The principal place of

business for BOA is 400 National Way, MS CA6-919-02-22, Simi Valley, CA

93065.  Defendant BOA is a "debt collector" pursuant to

15 USC §1692a(6) of the Fair Debt Collection Practices Act, and pursuant to the

Rosenthal Act specifically Cal.Civ.Code §1788.2(c).

9.        Defendant RECONTRUST COMPANY, N.A., (hereinafter referred to as

"RECON"), a business entity, form unknown,  is authorized to do business in the

State of California. RECON was the firm that prosecuted the Trustee Sale of

Plaintiff's property for  BNY. The principal place of business of RECON is 1800

Tapo Canyon Rd, CA6-914-01-94, Simi Valley, CA 93063. Defendant RECON is a

"debt collector" pursuant to 15 USC §1692a(6) of the Fair Debt Collection Practices Act, and pursuant to Rosenthal Act specifically Cal.Civ.Code §1788.2(c).

10.     MORTGAGE ELECTRONIC REGISTRATION SERVICES, (hereinafter referred to as "MERS", is a business entity, form unknown, authorized to do business in the State of California. MERS was named as Nominee for the lender in the original Deed of Trust.

11.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and will amend this complaint to allege the true names and capacities of these Defendants when ascertained. Plaintiff is informed and believes that each of the fictitiously named Defendants are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiff's damages. Plaintiff is informed and believes, and thereupon allege, that at all pertinent times each of the Defendants was the agent of each of the remaining Defendants, and/or acted with their consent, ratification and authorization, and/or aided and abetted one another in doing the acts alleged herein, each of the Defendants acted in such capacity with respect to the remaining Defendants.

## III. INTRODUCTION

12.     During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream — home ownership. Mortgage lenders and investment banks

aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals and under the promise that the booming real estate market would continue to boom. Wall Street took the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization." These "securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificateholders" of the securities that were to be fed by the toxic loans.

13. Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic insurance products in the form of Credit Default Swaps.[3] Thus, when the Mortgage Boom turned into a Mortgage Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

---

[3] In 1995, JPMorgan created the Credit Default Swap (CDS). Essentially, a CDS is a form of insurance intended to protect the buyer of the policy in case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan. The main difference between a traditional insurance policy and a CDS is that anyone can Purchase a CDS, even those who have no direct "insurable interest" in the lender. CDSs were instrumental during the housing bubble because once the banks ran out of creditworthy borrowers. they had to turn to uncreditworthy "subprime" borrowers. To avoid losses from default, the banks moved these risky mortgages off their books by bundling them into "securities" and selling them to investors. To induce investors to buy these securities, the securities were then "insured" with credit default swaps. CDSs allowed investors to bet against the average American to default on their mortgage with little risk. CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, since they knew the likelihood of default on those loans was much higher. Notably, AIG Insurance Company ("AIG"). an insurance carrier who owned a considerable market share of these CDS policies, was unable to make good on these

14.     However, in their rush to "securitize" the predatory loans, Wall Street failed

to actually follow its own rules and regulations, creating the instant situation where

the securities are not actually backed by any mortgages at all.  Under the standard

model, the promissory notes were *supposed* to be sold and transferred into a trust

pool ("Securitized Trust") that holds the promissory notes as collateral on the

securities bought by investors ("Certificateholders"). These "true sales" allow the

original lenders to move the notes off their books, eliminating the need to maintain

capital-adequacy reserves against default. The purpose of securitizing collateral debt

obligations was to provide a large supply of money to lenders for originating loans,

and to provide investment to bond holders which were expected to be relatively safe.

15.     The Securitized Trusts, if ever formed properly, are subject to and governed by (1)

the Pooling and Servicing Agreement (PSA); (2) the Mortgage and Loan Agreement; 3)

the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York,

depending on its origin, and (5) Internal Revenue Code section 860A through 860G,

better known as the Real Estate Mortgage Investment. Conduit ("REMIC") rules.

---

policies after the housing bubble burst resulting in AIG seeking a government bailout.
*See* Justin Fox, *Why the Government Wouldn't Let AIG Fail?,* TIME Business
(September 16, 2008)
http://www.time.comitime/business/article/0.8599,1841699,00.html. Thus, in the end,
it was the American taxpayer who bore the burden of these CDS.

16.  An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process; the promissory note and the security instrument (deed of trust or mortgage). In this case, on information and belief, neither document was validly transferred.

17.  Here, Plaintiff alleges that the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thereby, BNY did not acquire any legal, equitable, and pecuniary interest in Mr. Goudie's Note and Mortgage. As a result, thereof, BNY, which purported to be Mr. Goudie's creditor, actually had no secured or unsecured right, title, or interest in Mr. Goudie's Note and Mortgage, and had no right to collect mortgage payments, demand mortgage payments, or report derogatorily against Mr. Goudie's credit.[4]

---

[4] Plaintiffs allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.S. Bank vs. Ibanez*, SJC-10694, 2011 WL 38071. In *Ibanez*, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages. The court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

18.     Plaintiff further alleges that, on information and belief, the Luminent Trust Series 2007-1 (hereinafter "Luminent Trust") that purportedly owns Plaintiff's Note and Mortgage has been dissolved due to the disbursement and receipt of mortgage insurance payouts to BNY and the Certificateholders (including, but not limited to, Credit Default Swaps and other mortgage insurance products). As a result of these mortgage insurance payouts, BNY has been paid in full on Plaintiff's debt obligation.

19.   Nonetheless, BNY attempts to take advantage of the complex structured finance system to defraud yet another homeowner. Plaintiff anticipates that BNY will seek a Court-sanctioned bailout by submitting a blatantly fabricated "Assignment" via a Request for Judicial Notice, thereby committing fraud on the Court, and attempting to further mislead Plaintiff into believing that BNY is his actual creditor, and is entitled to enforce his obligation.

20.     Plaintiff does not dispute that he owed money on his mortgage obligation.[5] Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the holder in due course is of his Note and Deed of Trust, and specifically what rights, if any, BNY had to claim a secured or unsecured interest in Plaintiff's Note or Mortgage.

---

[5] However, simply because Plaintiff does not dispute this fact, the Court should not condone BNY's and BOA's fraudulent and predatory mortgage servicing practices and allow it to collect on money it was not owed. Simply put, the Court should not allow BNY or BOA to trample over 200 years of well-settled property laws just because Plaintiff "owes somebody the money."

21.    Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) a Chain of Title Analysis and Mortgage Fraud Investigation performed by Mortgage Compliance Investigators; and (4) a review of the purported "Assignment of Deed of Trust" and "Substitution of Trustee" signed by Renee Friedman.

22.    On or about December 7, 2005, Mr. Goudie executed a Note and Mortgage in favor of America's Wholesale Lender (hereinafter "AWL", a dba of Countrywide Home Loans), obtaining a loan on the Property.  MERS was named on the Deed of Trust as the purported "nominee" and "beneficiary" of the Deed of Trust.

23.    Plaintiff alleges and believes thereon that on or around the time of origination of the GOUDIE loan, AWL  attempted to securitize and sell his loan to another entity or entities. That entity was *not* BNY or the Luminent Mortgage Trust.

24.    Plaintiff alleges on information and belief that AWL never sold, transferred, or granted his Note or Mortgage to the Sponsor, Depositor, or BNY, and that BNY is merely a third-party stranger to the loan transaction. Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiff's Note was ever properly endorsed, and transferred to BNY. In fact, Plaintiff has requested that BOA verify and validate his debt. Although this information should be readily available to any mortgage servicer, BOA has failed to provide any evidence

to verify the owner and amount of Plaintiff's Mortgage or validate the claim to Plaintiff's debt obligation.

25.    The parties involved in the alleged Securitization and transfer of Plaintiff's Note and Mortgage failed to adhere to section 2.01 of the PSA, which requires that Plaintiff's Note and Mortgage be properly endorsed, transferred, accepted, and deposited with the Securitized Trust (or its custodian) on or before the "closing date" indicated on the Prospectus. The "closing date" is the date by which all of the Notes and Mortgages must be transferred into the Luminent Trust. The failure to do so results in the Note and Mortgage not being part of the Luminent Trust res, such that it is not a loan that either  BNY or BOA can attempt to collect on.

26.    On or about May 18, 2011, Renee Friedman, purportedly the "Assistant Secretary" for MERS, allegedly executed a document purporting to be a "Corporation Assignment of Deed of Trust" ("Assignment") in which she intentionally misrepresented to Plaintiff in writing that BNY had acquired an interest in his Note and Mortgage, and that MERS had endorsed, transferred, and negotiated his Note to BNY. In fact, no such transfer of interest took place, a fact that Ms. Friedman, BNY and BOA were aware of. *See* Exhibit "A", attached hereto is a true and correct copy of the Assignment, executed on March 18, 2011. Plaintiff specifically disputes the contents and authenticity of this document.

27.    Plaintiff alleges the only recorded "Assignment" was executed after the

COMPLAINT

closing date of the trust. The dubious "Assignment" raises numerous red flags and further demonstrates that Plaintiff's Note and Mortgage were not deposited into the Trust by the closing date, and that the "Assignment" was fabricated in an attempt to "paper over" the fatal securitization defects.

28.     The failure to deposit Plaintiff's Note into the Luminent Trust before the closing date is a violation of the PSA and of New York trust law. Consequently, the Luminent Trust cannot claim any legal or equitable right, title, or interest in Mr. Goudie's Note and Mortgage since BNY cannot take any action which is not authorized by the Securitization agreements that created and govern the Luminent Trust.

29.     Plaintiff does not allege or assert that he is a beneficiary or party to the PSA. Rather, Plaintiff alleges that the failure to securitize his Note makes it impossible for BNY, Luminent Trust, and/or BOA to claim, allege or assert that it was assigned, transferred or granted Plaintiff's Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiff also alleges that the failure to securitize his Note and Mortgage has resulted in an unperfected lien that Defendants were unable to legally enforce in any manner whatsoever.[6]

---

[6] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC Home Loans Servicing, and Recontrust, in which Attorney General Catherine Cortez Masto alleges that these entities

30.     Mr. Goudie relied on BNY and/or BOA's misrepresentations and has been

damaged in the following  ways: (1) his property was illegally foreclosed upon

depriving him of renal income and future property appreciation, (2) he has been

paying the wrong party for an undetermined amount of time and overpaid in

interest that was over calculated; (3) he is unable to determine whether he sent

his monthly mortgage payments to the right party; and (4) he has expended

significant funds to cover the cost of attorneys' fees and related costs.

31.     In addition to seeking compensatory, consequential, punitive, and other damages,

Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage)

secures any obligation of Plaintiff in favor of BNY or BOA such that either of them

can collect Plaintiff's mortgage payments, demand payment or engage in debt

collection activities.

---

engaged in unlawful and deceptive practices by misrepresenting to homeowners
that they had authority to foreclose despite the fact that there were fatal
deficiencies in transfers to the securitzation Trusts. *State of Nevada vs. Bank of
America et al.,* No. 3:11-cv-00135- RCJ, (C.D. Nev August 30, 2011). The AG
concludes that, "[t]hese are not mere technicalities The PSA's spelled out specific
procedures  in   order to ensure a proper transfer, protect the Trusts as the holders
in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers
need to know   the actual holders of their mortgages so that, for example, they
can investigate and assert available defenses in foreclosures, including that the
agent of the trustee lacks authority or standing under the Note." *Id* at ¶ 146

## IV.   THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE  CHAIN OF TITLE TO PLAINTIFF'S HOME

32.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a private corporation that administers the MERS System, a national electronic registry that  purports to track the transfer of ownership interests and servicing rights in mortgage loans, including Mr. Goudie's loan. In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. Mortgage lenders and other entities, known as MERS members,  subscribe to the MERS system and pay annual fees for the electronic processing and  tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS as their common agent on all mortgages they register in the MERS  system. In essence, MERS privatized the mortgage recording system, creating a situation wherein a borrower can no longer go to the Office of the County Recorder and  determine who their lender actually is at any given point in time.

33.   MERS is listed as grantee in the official records maintained at county  register of deeds offices. The lenders were supposed to retain the interest in the promissory notes, as well as the servicing rights to the mortgages, not MERS.

34.   Plaintiff alleges that MERS did not affect an assignment, transfer, negotiation, or sale of his Note and Mortgage to any Defendant or Doe Defendant.

35.  The operative document defining MERS and its rights and functions is the Deed of Trust ("Deed of Trust" or "Trust Deed"). The Trust Deed conveys a security interest and power of sale in the real estate to the Lender, not MERS.[7]

36.      Because MERS is merely an electronic registration system and not a true pecuniary beneficiary, it did not grant, assign, or transfer any true or pecuniary beneficial interest in Plaintiff's Note and Mortgage. Contrary to the recitations contained in the "Assignment" purportedly executed on March 18, 2011: (1) MERS did not receive any value or consideration for Plaintiff's Note and Mortgage, (2) MERS did not "grant, assign, or transfer" any interest in Plaintiff's Note and Mortgage; and (3) Renee Friedman, the purported signatory of the purported "Assignment", was not the "Assistant Secretary" for MERS and lacked the requisite corporate and legal authority to effect an actual "assignment" of Plaintiffs Note and Mortgage (assuming that MERS had any legal, equitable, or pecuniary interest in Plaintiffs Note and Mortgage, which Plaintiff claims it did not). In fact, Renee Friedman was actually an employee of RECON at the time she signed the Assignment.

---

[7] This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County of San Bernardino: [legal description of property]. Deed of Trust at ¶ R.

37. Plaintiff further alleges that the signature of the Notary (Ahmad Fazal) attesting to Ms. Friedman's signature was a forgery, as it bears no resemblance to Mr. Fazal's signature on his Notary Public Oath and Certificate of Filing document issued by the State of California (Compare with Exhibit "B"), and was dated 3 days after Ms. Friedman's signature, thereby invalidating the document.

38.     MERS's own membership rules directly prohibit MERS from ever claiming ownership of any mortgages or negotiable instruments, including Mr. Goudie's. *See* **Exhibit "C"** attached hereto, is a true and correct copy of MERS's Terms and Conditions. A successor-in-interest to the beneficial interest in the Trust Deed may choose to engage MERS as its agent by execution of a subsequent agreement, but MERS and its members cannot force MERS upon all future purchasers simply by claiming such authority in the original deed of trust. In fact, in a September 2009 deposition, former President of MERS, R.K. Arnold admitted that MERS does not have a beneficial interest in any mortgage, that it does not loan money, and that it does not suffer a default if a borrower fails to repay a mortgage loan.[8]  Therefore, MERS does not own Mr. Goudie's Note and Mortgage, and did not "grant, assign, or transfer" any interest therein to BNY on March 18, 2011, or at any time before or thereafter.

39.     The purported "assignment" of Mr. Goudie's Note and Mortgage is a fraudulent lien claim and in direct contravention of the laws and customs of California.[9]

40.   Therefore, based on the foregoing, MERS did not, *in fact,* assign any interest to BNY, such that BNY could demand mortgage payments or report Mr. Goudie's payments as late.

## V.   THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN   THAT CONVEYED NO INTEREST TO BNY

41.   On March 29, 2011, (7 days after the Trustee Sale of the Property), BNY and/or BOA caused the Assignment to be recorded with the County of San Bernardino. The Assignment alleged that for "value received" MERS granted, assigned, and transferred to BNY  all beneficial interest in the Deed of Trust. The Assignment was purportedly signed by "Renee Friedman," as the "Assistant Secretary" of MERS. Plaintiff alleges that no such transfer ever occurred, and that Renee Friedman is not the

---

[8] *See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.,* Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraud.com/2010/05/29/fulldeposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

[9] "Whatever 'necessary to comply with law or custom' means,  (and there is no evidence in the record to explain it), it should not mean that BNY or MERS' can contract away their obligations to comply with foreclosure statutes." *In re Salazar.* 448 B.R. 814. 823 (finding that the MERS system is not an alternative to statutory foreclosure laws. which "must be respected." and affirming that "[t]his court ...joins the courts in other states that have rejected MERS' offer of an  alternative to the public recording system."). *Id.* at 824

"Assistant Secretary" of MERS, but was at the time of signing, an employee of RECON.

42.   Plaintiff alleges that Renee Friedman is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.[10]

43. In fact, the Assignment was fraudulently executed without MERS's or AWL'S knowledge or authorization.

44.   Renee Friedman was never, in any manner whatsoever, appointed as the "Assistant Secretary" by the Board of Directors of MERS, as required by MERS's corporate by-laws and an adopted corporate resolution by the Board of Directors of MERS. For that reason, Renee Friedman never had, nor has, any corporate or legal authority from MERS, or the lender's successors and assigns, to execute the purported "Assignment."[11] This was an intentional act undertaken by BNY, BOA and/or RECON, done knowingly with the specific intent that the consequences of

---

[10] A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country, available at http://www.youtube.com/watch?v=UdeFyPC5MN1. Ms. Green was interviewed by "60-Minutes" and admitted that her signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day. These individuals are now known as "robo-signers."

their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

45.  The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection of Plaintiff's mortgage payments, as well as engaging in other debt collection activities.

46.   Plaintiff further alleges that any amount allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to Plaintiff from Defendants, which amount is currently unknown, but will be determined upon conducting discovery. Plaintiff believes this amount will be in excess of the amount of his obligation.

47. Attempting to "assign" or transfer a Deed of Trust by itself, as Defendants did here, does not allow enforcement of Plaintiff's Note and Mortgage. As alleged herein, Plaintiff's Note was not properly negotiated, endorsed, and transferred to BNY who sought to cause

---

[11] The instant case is analogous to *Kingman Holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.,* WL 1883829 (E.D. Tex. 2011) *("Kingman"),* where the court denied a motion to dismiss with similar causes of action as those that are pled here on the basis that the plaintiff had adequately challenged the signatory's alleged title as "Vice President" of MERS. The *Kingman* court held that the plaintiff had adequately pled that the assignment executed by Nate Blackstun as "Vice President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice President.

its purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

48.     California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

49.     On information and belief, none of the Defendants were/are present holders in due course of Plaintiff's Note such that they can enforce Plaintiff's obligation and demand mortgage payments.

50.     On information and belief, Defendants were not, and are not, a nonholder in possession of Plaintiff's Note who has rights of the holder.

51.     If there is or was a holder in due course of Plaintiff's Note at issue, pursuant to California Commercial Code section 3301, et seq. and/or the PSA, it is the entity that can establish a pecuniary, legal, and equitable interest in the Property, and provide an unbroken chain of title to Plaintiff's Note and Mortgage.[12]

52.  On information and belief, none of the Defendants were/are entitled to enforce Plaintiff's Note pursuant to § 3309 or subdivision (d) of § 3418.

53.  Plaintiff alleges that, prior to demanding mortgage payments from Mr. Goudie, none of the Defendants or Doe Defendants had, nor presently have, a secured or unsecured legal, equitable, or pecuniary interest in Plaintiff's Note

---

[12] The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re Kemp,* Case No. 08-18700-JHW. (Bankr. D. N.J. November 16. 2010) (for publication) exposed the shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due course" status. In that case Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement. Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the original mortgage notes. which were stored in Simi Valley, California. despite securitization contracts that required the notes and mortgages to be physically transferred to sponsors, trustees or custodians of the securitized trusts. The findings in court decisions all over the country, news stories, attorneys generals' complaints, and state and federal investigations reveal that business practices like Countrywide's were common place and, like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans. . . Ms. Martini's testimony has been corroborated by Abigail Field of CNN. who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide securitizaton trust, and found that none of the 104 loans that were examined were endorsed by Countrywide: "..If the lack of endorsement on these notes is typical—and 104 out of 104 suggests it its—the problem occurs across Countrywide securities." *See* Abigail Field. *At Bank of America, More Incomplete Mortgage Docs Raise More Questions.* Fort.. (June 3. 2011), http://finance.fortune.cnn.com/2011/06/03/at-bank-of/america-more incomplete-mortgage-does-and-more-questions/.

and/or Deed of Trust as required under California law — irrespective of who is actually in physical possession of Mr. Goudie's Note.

54.     Plaintiff alleges that, on information and belief, BNY, BOA and/or its agents were fraudulently enforcing a debt obligation in which they had no pecuniary, equitable or legal interest. Thus, BNY and BOA'S conduct is part of a fraudulent debt collection scheme.

## VI. THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENT THAT CONVEYED NO LEGAL AUTHORITY TO  RECON TO ACT AS THE SUBSTITUTED TRUSTEE

55.     The Deed of Trust names ***SAN BERNARDINO*** CTC REAL ESTATE SERVICES  as Trustee.

56.    On March 18, 2011, MERS caused a document purporting to be a Substitution of Trustee ("Substitution") to be recorded with the County of San Bernardino (See Exhibit "D").The Substitution alleged that "the present Beneficiary under said Deed of Trust...hereby substitutes RECONTRUST COMPANY, N.A. as Trustee under said Deed of Trust." The Substitution was purportedly signed by "Renee Friedman," as an "Assistant Secretary" of MERS. Plaintiff alleges that no such transfer ever occurred, and that Renee Friedman is not the "Assistant Secretary" of MERS, and that the Notary signature of Ahmad Afzal, who attested to her signature,  was forged.

57. Provision 24 of the Deed of Trust governs the Substitution of Trustee. It provides in relevant part:

> **"Lender,** at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument **executed <u>and acknowledged by Lender.</u>** ....The instrument **<u>shall contain the name of the Original Lender</u>**, Trustee and Borrower.........This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."

58.  In violation of Provision 24, and Cal. Civ. Code section 2934(a), the lender party failed to file a valid Substitution of Trustee, substituting RECONTRUST COMPANY, N.A. as the new trustee. Plaintiff alleges the recorded Substitution is void because MERS nor BNY was not the current "Lender" at the time of the execution of the Substitution.

59.     MERS and/or RECONTRUST COMPANY, N.A. (hereinafter "RECON") (in its capacity as the purported substituted trustee) recorded a Substitution of Trustee claiming that as the present beneficiary, MERS desired to substitute RECON in as the trustee. Plaintiff alleges that no such substitution occurred.

60.   Plaintiff alleges that Renee Friedman is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

61.    Renee Friedman is not an "Assistant Secretary" for MERS and in fact, the Substitution was fraudulently signed without MERS's knowledge or authorization.

62.  Renee Friedman was never, in any manner whatsoever, appointed as an "Assistant Secretary" by MERS, and thus giving her no corporate or legal authority from MERS, or the lender's successors and assigns, to execute the purported "Substitution." In fact, Ms. Friedman, at the time of signing this Substitution, was an employee of RECON, fraudulently attempting to assign her own company as the new Trustee. This was an intentional act undertaken by MERS , RECON, BNY and/or BOA, in concert, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have, as evidenced by the instant debt collection activities.

63. Plaintiff further alleges that the signature of the Notary (Ahmad Afzal) attesting to Ms. Friedman's signature was a forgery, as it bears no resemblance to Mr. Afzal's signature on his Notary Public Oath and Certificate of Filing document issued by the State of California (Compare with Exhibit "B"), and was dated 3 days after Ms. Friedman's signature.

64.     The "Substitution" is a fraudulent document, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection and attempts to collect on Plaintiff's obligation and is therefore **void**.

65.     Attempting to "substitute" RECON under said Deed of Trust, as Defendants did here, does not allow RECON to act under the Deed of Trust.

## VII.  PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES,

66.     The conduct described above by BNY, BOA, MERS and/or RECON, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage. However, despite such knowledge, said Defendants continued to demand and collect Plaintiffs mortgage payments.

67.     Defendants engaged in a pattern and practice of defrauding Plaintiff, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

68.     On information and belief, at all times material, BNY and BOA had and have actual knowledge that Plaintiff's accounts were not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate accounts.

69.     On information and belief, Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff's accounts.

70.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest.

71.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff's credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on his credit report by BNY and/or  BOA,

Mr. Goudie is unable to refinance out a present loan, buy another property, or sell his home.

72.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff's home has been unlawfully foreclosed upon.

73.     The conduct of BNY, BOA, RECON and one or more of the Doe Defendants has led to the loss of Plaintiffs home and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs of over calculation and overpayment of interest, the costs of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs credit limits, the tax liability on the "forgiven debt", loss of rents, loss of future appreciation and court costs, in an amount to be proven at trial.

74.   The conduct of BNY, BOA, RECON and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiff's Note and Deed of Trust, yet they intentionally and fraudulently covered up this defect by wrongfully recording a fraudulent Assignment, which would enable them to *illegally and fraudulently* collect on Plaintiff's debt, and foreclose on Plaintiff's property.


VIII. FIRST CAUSE OF ACTION — DECLARATORY RELIEF: TO DETERMINE STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202] [Against All Defendants and Doe Defendants]

75.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

76.        Section 2201(a) of Title 28 of the United States Code states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country as defined in section 516A(f)(10) of the Tariff Act of 1930 ), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

77.   Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

78.   Plaintiff alleges that neither BNY nor BOA had a secured or unsecured legal,

equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment had no value since the Deed of Trust was wholly unsecured.

79. On or about March 18, 2011, Defendants claim they have a secured enforceable interest in, and perfected lien against, the Plaintiff's Note, Deed of Trust and Property.

80. Thus, the competing allegations made by Plaintiff, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

81. Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have, or had at any time, any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

82. Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) he will be denied the right to conduct discovery and have BNY claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (2) he will be denied the opportunity to discover the true amount of the alleged "debt forgiveness", illegal costs, fees and charges.

83.     Due to the actual case and controversy regarding competing claims and

allegations, it is necessary that the Court declare the actual rights and obligations of

the parties and make a determination as to whether BNY's claim against Plaintiff

was enforceable and whether it was secured or unsecured by an right, title, or

interest in Plaintiff's Property.

84.     Furthermore, the conduct of BNY and BOA, and RECON as their agent,

and one or more of the Doe Defendants, and each of them, as herein described,

was so malicious and contemptible that it would be looked down upon and despised

by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount

appropriate to punish Defendants and to deter others from engaging in similar

conduct.

## IX. SECOND CAUSE OF ACTION — NEGLIGENCE
[Against All Defendants and Doe Defendants]

85.     Plaintiff hereby incorporates by reference each and every one of the

preceding paragraphs as if the same were fully set forth herein.

86.     At all times relevant herein, BOA, MERS and RECON was acting as

purported agents for BNY. Defendants are jointly and severally liable for BNY and/or

BOA'S negligent and reckless conduct.

87.     BNY as the purported beneficiary of the Note and Deed of Trust, and BOA

as purported mortgage servicer, all have a duty to exercise reasonable care[13] and

skill to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that they did not have the legal authority to do. This includes not collecting or demanding mortgage payments when they do not have the right to enforce the obligation, causing the Plaintiff to overpay in interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of Plaintiff's mortgage payments, credits, and debits (if BOA is in fact the legally authorized mortgage servicer for Plaintiff).

88.     BNY and BOA have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do. As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraudulent activity of the Defendants as set forth above, Plaintiff has lost ownership of the subject property and suffered loss of rents and considerable tax liability on the alleged "forgiven debt".

---

[13]Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal. App. 3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am.,* 186 Cal. App. 4th 727, 741 (2010). Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* (citing *Casey v. U.S. Bank Nat. Assn.,* 127 Cal. App. 4th 1138, 114445).

89.     BNY and Bank of America breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and Deed of Trust into the Luminent Trust by the closing date.

90.     As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trial, including attorneys' fees and costs of bringing suit to dispute, validate, and challenge said Defendants' purported rights to enforce his debt obligation against him.

## X.   THIRD CAUSE OF ACTION — QUASI CONTRACT
[Against All Defendants and Doe Defendants]

91.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

92.     BNY and/or BOA demanded monthly mortgage payments from Plaintiff and continued to collect payments from Plaintiff. Plaintiff reasonably relied upon BNY and/or BOA's assertion that it/they were entitled to the benefit of Plaintiff's mortgage payments.

93.     BNY and/or BOA knowingly accepted payments and retained them for its own use knowing that BNY and/or BOA did not acquire an interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments. It would be inequitable for BNY and/or BOA to retain the payments it received from Plaintiff

which it did not have legal authority to collect. The equitable remedy of

restitution when unjust enrichment has occurred is an obligation created by the

law without regard to the intention of the parties, and is designed to restore the

aggrieved party to their former position by return of the thing or its equivalent in

money.

94.     Section 23 of the Deed of Trust states that: "Upon payment of all sums

secured by this Security Instrument, Lender shall request Trustee to reconvey the

Property and shall surrender this Security Instrument and all notes evidencing debt

secured by this Security Instrument to Trustee. Trustee shall reconvey the Property

without warranty to the person or persons legally entitled to it." The obligations to AWL

under the Deed of Trust were fulfilled when AWL received the balance on the Note as

proceeds of sale of Plaintiff's Note and Mortgage to a presently unknown entity.

BNY and/or BOA have been unjustly enriched by collecting monthly payments

from Plaintiff when they had no interest in his Note.

95.     Plaintiff seeks restitution for any payments he made to BNY and/or

BOA that were not paid to the lender or beneficiary, if any.


## XI. FOURTH CAUSE OF ACTION  VIOLATION OF 15 U.S.C. § 1692, ET SEQ
### (Against Defendants BNY, BOA & RECON)

96.     Plaintiff hereby incorporates by reference each and every one of the

preceding paragraphs as if the same were fully set forth herein.

97.     The Assignee named by the document purporting to be a "Corporation Assignment of Deed of Trust" is The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of the Luminent Mortgage Trust 2006-1.

98.     In order to exist, the LUM-2006-1 Trust agreed to operate under the LUM-2006-1 Trust PSA and all applicable Law. In order to for the Goudie Mortgage Loan to be transferred to the LUM-2006-1 Trust, a chain of negotiations needed to occur. **A direct transfer from the Original Lender, America's Wholesale Lender, to the Trustee, The Bank of New York, violates the terms and conditions under the LUM-2006-1 Trust PSA, under New York State Trust Law governing the LUM-2006-1 Trust, and is therefore void.** These principles were recently confirmed in US District Court and New York Supreme Court and the California Supreme Court.[14]

99..    Furthermore, this document purporting to be a "Corporation Assignment of

----

[14] See *Wells Fargo Bank, N.A. v. Erobobo, et al., 2013 WL 1831799 (N.V. Sup. Ct. April 29, 2013).* In Erobobo, defendants argued that plaintiff (a REMIC trust) was not the owner of the note because plaintiff obtained the note and mortgage after the trust had closed in violation of the terms of the PSA governing the trust, rendering plaintiff's acquisition of the note void. Id. at *2. The Erobobo court held that under § 7-2.4, any conveyance in contravention of the PSA is void; this meant that acceptance of the note and mortgage by the trustee after the date the trust closed rendered the transfer void. Id at 8. Based on the Erobobo decision and the plain language of N.Y. Est. Powers & Trust Law § 7-2.4, the Court finds that under New York law, assignment of the Saldivars' Note after the start up day is void ab initio".

Deed of Trust" is not timely to properly transfer the Goudie Note and Deed of Trust to the LUM-2006-1 Trust where it has been shown to be an asset.

100.    The closing date for the LUM-2006-1 Trust was January 26, 2006. What this means is that the LUM-2006-1 Trust is unable to have any other assets put into the LUM-2006-1 Trust after the January 26, 2006 closing date.

101.    In view of the foregoing, all assignments executed after the LUM-2006-1 Trust's closing date are void for the reason that all assignments into the Trust after January 26, 2006 violate the express terms of the LUM-2006-1 Trust PSA. All assignments of Mortgages/Deeds of Trust and or indorsements of notes executed after the LUM-2006-1 closing date are **void**.

102.    The Prospectus Supplement (To Prospectus dated January 25, 2006) for the LUM-2006-1 Trust provides that any attempted or purported transfer in violation of these transfer restrictions will be **null and void** and will vest no rights in any purported transferee. Any transferor or agent to whom the Trustee provides information as to any applicable tax imposed on such transferor or agent may be required to bear the cost of computing or providing such information.

103.    There is a document purporting to be a "Substitution of Trustee" dated March 18, 2011 recorded March 29, 2011 in the Official Records of San Bernardino County, CA as ins# 2011-0124232 signed by Renee Friedman, as Assistant Secretary of MERS and

notarized March 21, 2011 by Ahmad Afzal, Ventura, County, CA, Comm# 1744009 where Mortgage Electronic Registration Systems, Inc., as present Beneficiary substitutes Recontrust Company, N.A., as trustee of a Deed of Trust dated December 07, 2005 recorded March 29, 2011 as ins# 2011-0124232. (Exhibit "D").

104.  As explained above, the document purporting to be a "Corporation Assignment of Deed of Trust" dated March 18, 2011 is invalid as a Corporation Assignment of Deed of Trust and did nothing to transfer any right or interest in the Goudie Deed of Trust to BNY.  As no rights or interests in the Goudie Deed of Trust have been transferred to BNY, neither BNY nor any of its agents had any right to substitute Recontrust Company, N.A. as Trustee to the Goudie Deed of Trust. With neither BNY nor any of its agents having any right to substitute Recontrust Company, N.A. as Trustee of the Goudie Deed of Trust, the document purporting to be a "Substitution of Trustee" dated March 18, 2011 is invalid as a Substitution of Trustee.

105.  Furthermore, upon information and belief, Plaintiff alleges that Renee Friedman, (who signed the Substitution of Trustee naming RECON as the new Trustee) is not and never was an authorized Assistant Secretary of MERS, but was an employee of RECON on March 18, 2011, and therefore unlawfully signed the document, making the Substitution of Trustee void and invalid.

105.  Furthermore, upon information and belief, Plaintiff alleges that the Notary signature on the Substitution of Trustee is invalid for the following reasons:

a. The signature is dated March 21, 2011, three days after Renee Friedman signed it on March 18, 2011,

b. The signature of Ahmad Afzal is a forgery, as it bears no resemblance to the Notary signature on the Notary Public Oath and certificate of Filing issued by the State of California (Exhibit "B").

106.  The unauthorized Notice of Default provided by RECON  is  unlawful  and prejudicially defective against the Plaintiff. The non-judicial foreclosure sale was unlawful because Plaintiffs' never received proper notice of the default from an authorized person or entity pursuant to the requirements laid out in California Civil Code section 2924.

107.   In prosecuting the foreclosure and unlawful detainers the debt collector Defendants:

a. made false, deceptive and misleading representations concerning their standing to pursue foreclosure action  and their interest in the debt [§1692e(10)],

b. falsely represented  the character, amount and status of the debt, in particular, the amount due, and that it was due and owing by plaintiff to defendants at the time a foreclosure was initiated [§1692e(2)(A)],

c. falsely represented the legal status of the debt or implied that the debt was owing to defendants as an innocent purchaser for value, when in fact, a valid and legal assignment had not been accomplished [§1692e(2)(A)],

d. attempted to collect an amount not authorized by the agreement creating the debt or permitted by law [§1692f(1)],

e. threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings as trustees that cannot legally be taken by them [§1692e(5)],

f. took action to unlawfully repossess or disable the Plaintiff's property [§1692f(6)(A)], and

g. obtained access to state courts to evict Plaintiff's tenants, under false pretenses, namely, that Defendants were duly authorized to engage in such activities when in fact they were not, and

h. in the case of Purchasers, Law Firm Defendants, knew or should have known they did not acquire proper title and proceeded with eviction proceedings against Plaintiff 's tenants anyway.

108.   Defendants did not, and cannot, obtain and/or file an assignment of the notes or mortgages of the named Plaintiff at this time as it would violate the "Pooling and Service Agreements" used in securitization.

109.   The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, §1692e(2)(A), §1692e(5), §1692e(10), §1692f(1), and §1692f(6)(A).

110.     Plaintiffs are entitled to recover equitable relief, statutory damages,
actual damages, and costs, per 15 USC §1692k.

## XII. <u>FIFTH CAUSE OF ACTION</u>

VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION
PRACTICES ACT ("Rosenthal Act") California Civil Code § 1788, et seq.
(Against Defendants BNY, BOA & RECON)

111.     Plaintiff repeats and re-alleges each and every allegation contained above.

112.     "Debt collectors" named in this cause of action are subject to the
Rosenthal Act, California Civil Code 1788.2(c).

113.     Defendants' actions constitute a violation of California Civil Code
§1788.17,  also known as the Rosenthal Act, in that they threatened to take actions
prohibited by law, including, without limitation: falsely stating the amount of a debt;
increasing the amount of a debt by including amounts not permitted by law or
contract; unlawfully foreclosing upon the Subject Property; and using unfair and
unconscionable means in an attempt to collect a debt.

114.     Cal. Civ. Code 1788.17 states, "...every debt collector collecting or
attempting to collect a consumer debt shall comply with the provisions of sections
1692b to 1692j, inclusive of, and shall be subject to the remedies in Section1692k of
Title 15 of the United States Code...."

115.    Defendants' misconduct has caused Plaintiff to suffer actual damages.

116.    As a result of Defendants' misconduct, Plaintiff is entitled to actual

damages and statutory damages pursuant to Cal. Civ. Code 1788.30, in an amount to

be determined at trial. Moreover, said Defendants' misconduct was willful,

malicious, and outrageous, and therefore punitive damages are warranted and

demanded.

117.    Pursuant to the controlling contractual document(s) and applicable law,

Plaintiff is entitled to recover costs and fees.

118.    Plaintiff is 79 years old, a senior citizen within the meaning of California

Civ. Code § 3345 and as a consequence of Defendant's wrongful conduct, Plaintiff is

entitled to treble damages imposed by the trier of fact pursuant to Cal. Civ. Code §

3345.


## XIII.  SIXTH CAUSE OF ACTION — VIOLATION OF
## BUS. AND PROF. CODE SECTION 17200, ET SEQ.

[Against All Defendants and Doe Defendants]

119.    Plaintiff hereby incorporates by reference each and every one of the

preceding paragraphs as if the same were fully set forth herein.

120.    Defendants' conduct, for the reasons stated herein, is in direct violation of

12 U.S.C. § 2605(e), et seq.

121.    Defendants' conduct, for the reasons stated herein, is in direct violation of

Cal. Penal Code section 532(f)(a)(4).

122.    Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair

competition, which means and includes any unlawful, unfair or fraudulent

business act and conduct which is likely to deceive and is fraudulent in nature.

123.    As more fully described above, Defendants' acts and practices are unlawful,

unfair, and fraudulent. This conduct is ongoing and continues to this date.

124.    Defendants engage in unfair, unlawful[15], and fraudulent business practices

with respect to mortgage loan servicing, and related matters by, among other things:

   (a)  executing and recording false and misleading documents[16];

   (b)  executing and recording documents without the legal authority to do

   so;

   (c)  failing to disclose the principal for which documents were being

   executed and recorded in violation of Cal. Civ. Code section 1095;

   (d)  demanding and accepting payments for debts that were non- existent;

---

[15] "Unlawful" acts or practices are those forbidden by law, be it civil or
criminal, federal, state, or municipal, statutory, or court-made. *Saunders v.
Superior court,* 27 Cal.4th 832 (1994); *Hewlett v. Squaw Valley,* 54 Cal.4th 499
(1997).

       (e)    reporting payments as late to credit bureaus without the legal

           right or authority to do so;

       (f)   acting as a beneficiary without the legal authority to do so, and;

       (g)   other deceptive business practices as described herein.

125.   As more fully described above, Defendants' acts and practices are likely to deceive members of the public.

126.   As more fully described above, Defendants' acts and practices are unfair and the harm caused by the conduct outweighs any benefits that the conduct may have.

127.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants violate several laws including Cal. Bus. and Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

128.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The scheme

---

[16] Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that Defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

129.    The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

130.    By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and Prof Code sections 17203 and 17204.

131.    As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that his property was unlawfully taken from him.

132.    Plaintiff is entitled to an order compelling BNY, BOA, RECON and any other defendants,  enjoining such Defendants from taking such actions again in the future.

### XIV.   SEVENTH CAUSE OF ACTION — ACCOUNTING
[Against  Defendants BNY and BOA]

133.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

134.    BNY, and BOA as its purported agent, have held themselves out to be

Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.[17]

135.    As a result of the aforementioned fraudulent conduct, Plaintiff paid BNY and/or BOA his mortgage payments for a period of approximately five years. However, for the reasons stated herein, none of this money was actually owed to BNY and/or BOA. For that reason, these monies are due to be returned to Plaintiff in full.

136.    The amount of the money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiff is informed and believes and thereon alleges that the amount due to him exceeds $75,000.00.

## XV. EIGHTH CAUSE OF ACTION - CIVIL CONSPIRACY
### (Against all Defendants)

---

[17] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim for accounting are: 1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to the Plaintiff that can only be ascertained by an accounting. *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.).

137.     Plaintiffs re-allege and incorporate by reference all the allegations set forth above.

138.     Plaintiff alleges that all named Defendants, and as yet un-named Doe Defendants <u>conspired, aided and abetted each other in the commission of a tort against Plaintiff, that being pursuit of the unlawful foreclosure of the Subject Property.</u> All Defendants were involved in pursuit of the unlawful foreclosure action and knew, or should have known their actions were unlawful, and yet willfully proceeded with the conspired action, therefore all Defendants are liable[18].

139.     The basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.

140.     It is legal commonplace that the existence of a conspiracy may be inferred from circumstances, and that the conspiracy need not be the result of an express agreement but may rest upon tacit assent and acquiescence.

141.     Plaintiff suffered significant damages (enumerated above) because of the results of this conspiracy.

---

[18]A bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* (citing *Casey v. U.S. Bank Nat. Assn.,* 127 Cal. App. 4th 1138, 114445).

WHEREFORE, plaintiff demands judgment as follows:

1.      For statutory, compensatory, special and general damages in an amount according to proof at trial, but not less than $1,000,000, against all Defendants;

2.      For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.      Plaintiff seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, and such other and further relief as the Court may deem just and proper.

4.   Declaratory judgment that Defendants had no authority to pursue the foreclosure action and their conduct violated the FDCPA, the Rosenthal Act and the Business and Professional Code.

5. Award of treble damages pursuant to Cal. Civ. Code 3345. (Defendant is a Senior Citizen as defined in the Code.)

6. An award of pre-judgment and post-judgment interest.

7. Enjoin Defendants, their successors in office, agents, employees, and all other persons in active concert and participation with them from continuing their practice of pursuing improper debt collection actions.

8. Any other further legal and/or equitable relief to which Plaintiff might be entitled at law or which the Court deems proper, including, according to proof, exemplary or punitive damages as may be necessary and appropriate to punish and deter any reprehensible or intentional misconduct.

## XVI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.


Dated this 16th day of July, 2014

*Lawrence A. Goudie*

Lawrence A. Goudie
Pro Se
4031 N. F St
San Bernardino, CA
909-266-1642 H
909-215-8256 C
lagoudie@yahoo.com

# EXHIBIT "A"

**Landsafe Default Inc.**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

Recorded in Official Records, County of San Bernardino          3/29/2011
                                                                8:00 AM
**DENNIS DRAEGER**                                              BGJ
ASSESSOR – RECORDER – CLERK

**771 Document Processing Solutions**

Doc#: **2011-0124233**

| | |
|---|---|
| Titles: 1 | Pages: 1 |
| Fees | 18.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $18.00 |

TS No. 11-0021719

11-0017590

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE LUMINENT MORTGAGE TRUST 2006-1, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-1**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/07/2005, EXECUTED BY:
LAWRENCE A GOUDIE, AND EVELYN G. GOUDIE, HUSBAND AND WIFE, AS JOINT TENANTS., TRUSTOR:
TO ***SAN BERNARDINO***CTC REAL ESTATE SERVICES, TRUSTEE AND RECORDED AS INSTRUMENT
NO. 2005-0957731 ON 12/19/2005, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF SAN
BERNARDINO COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED: March 18, 2011                          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

                                                                          MAR 1 8 2011

State of:  **California**            )     BY: _____
County of:  **VENTURA**             )     Renee Friedman, Assistant Secretary

On __MAR 2 1 2011__ before me, _____AHMAD AFZAL_____, notary public, personally appeared
_____RENEE FRIEDMAN_____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____  (Seal)
         AHMAD AFZAL

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC • CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

*Form asgnmnt (01/09)*

A

49

# EXHIBIT "B"

## NOTARY PUBLIC OATH AND CERTIFICATE OF FILING

### MUST BE FILED IN THE COUNTY CLERK'S OFFICE BY 06-07-2007

*I hereby certify that the official bond and oath of office of the person whose name is shown below, was filed on the date indicated and that the following is a copy of said oath.*

State of California    **VENTURA**

County of _____

☒ *Subscribed and sworn to before me, and filed in my office,*

**OR**

☐ *Filed in my office, this*

_____ *day of* **MAY 1 5 2007** , 20 _____

~~PHILIP J. SCHMIT~~ By 

*County Clerk/Deputy*

**(This Area is for County Clerk's Use Only)**

**F I L E D**
Ventura County Clerk

MAY 1 5 2007

PHILIP J. SCHMIT, County Clerk

By: _____
Deputy County Clerk

**[PLACE OFFICIAL SEAL HERE]**

---

I, _____**Ahmad Afzal**_____ , *do solemnly swear and (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.*

**SIGNATURE OF NOTARY**

*The signature must be used by you in signing ALL notarized documents and must match the signature on your Notary Public application.*

**Ahmad Afzal**

Self
2503 Aurora Lane
Simi Valley  93063

*Pursuant to Government Code section 8213.5, any change of address must be sent to the Secretary of State by certified mail. Changes to the address on this form will NOT update your address with the Secretary of State.*

Commission No. **1744009** for term commencing 05/08/2007 and ending 05/07/2011 in the county of VENTURA.

### FOR PERSONS FILING BY MAIL

State of California

County of _____

*Subscribed and sworn to (or affirmed) before me on*

this _____ *day of* _____ , 20 _____ , by _____ ,

*personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.*

_____
*(Signature of Notary Public administering oath of office)*

**[PLACE NOTARY SEAL HERE]**

**NOTE: FOR INFORMATION ON THE AMOUNT OF THE FEES FOR FILING AND RECORDING THE OFFICIAL BOND AND OATH, CONTACT YOUR COUNTY CLERK/RECORDER.**

☐ **Check here if county transfer.** *A county transfer can only be filed after the initial oath and bond have been filed*

*Sec/State NP 18 (Rev. 1/05)*      PI: 1169504

13

50

I hereby certify that the foregoing
transcript of_____/_____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

OCT 21 2010

Date:_____

*Debra Bowen*

DEBRA BOWEN, Secretary of State

*B*

51

# EXHIBIT "C"



**TERMS AND CONDITIONS**

1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request. The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party. The Member shall be bound by any amendment to any of the Governing Documents.

2. The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3. MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS. .

4. No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5. If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6. MERS and the Member agree that: (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7. If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS. The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member. The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8. The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time. The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time. MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9. MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("Indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim"). Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

VC10052000VA

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify. MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors arid omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for *and* be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial *owner* unless otherwise requested by the beneficial owner,

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, Virginia, 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held *in* Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

*In* the event that the Member *and* MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, *and* fees and *expenses* for the arbitration proceedings shall be paid by the party initiating arbitration.

# EXHIBIT "D"

**Landsafe Default Inc.**

RECORDING REQUESTED BY:
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

ATTN: Jonathan Jackson
TS No. 11-0021719

11-0017590



Recorded in Official Records, County of San Bernardino

**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

3/29/2011
8:00 AM
BGJ

**771 Document Processing Solutions**

| Doc#: | 2011-0124232 | | Titles: | 1 | Pages: | 1 |
| | | | Fees | | | 18.00 |
| | | | Taxes | | | 0.00 |
| | | | Other | | | 0.00 |
| | | | PAID | | | $18.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, LAWRENCE A GOUDIE, AND EVELYN G. GOUDIE, HUSBAND AND WIFE, AS JOINT TENANTS. was the original Trustor, ***SAN BERNARDINO***CTC REAL ESTATE SERVICES was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 12/07/2005 recorded on 12/19/2005 as Instrument No. 2005-0957731 in Book Page of Official Records of San Bernardino County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:March 18, 2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

MAR 1 8 2011

State of: California

County of: VENTURA

BY: _____
Renee Friedman, Assistant Secretary

On MAR 2 1 2011 before me, _____AHMAD AFZAL_____, notary public, personally appeared Renee Friedman, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

AHMAD AFZAL

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

*Form sub (01/09)*

D

54



CERTIFIED MAIL™

7011 3500 0000 8998 0393

UNITED STATES POSTAL SERVICE

PRIORITY® MAIL

UNITED STATES POSTAL SERVICE

PRIORITY® MAIL

Visit us at usps.com

Label 107R, January 2008

Lawrence A Goudie
4031 N F St.
Sn Bernrdino, CA 92407-3409

United States District Court
Central District of California
Western Div
312 N Spring St G-8
Los Angeles CA 90012

JUL 17 2014